SOMERS v. MUSOLF.

Opinion delivered April 20, 1908.

1. LANDLORD AND TENANT—EVICTION—DAMAGES.—Where a lessor, after executing a lease for a term of years, ejected his lessee before the term expired, the measure of damages was the profit or compensation which the lessee would have earned for his services under the contract if he had been permitted to perform it, less what he earned or could by reasonable effort have earned in other employment during the unexpired period. (Page 100.)

2. SAME—DAMAGES FOR EVICTION—COUNTERCLAIM.—Where a lessee of a farm, by the terms of his lease, undertook to furnish the labor of his two brothers, for which he was to receive a fixed compensation in addition to one-half of the farm produce, and was ejected by the lessor before expiration of the lease, in determining the lessee's damages the amount which it would have cost him to furnish the labor of his brothers should be deducted, but not the earnings of such brothers during the unexpired period of the contract. (Page 100.)

3. SAME—ENFORCEMENT OF CONTRACT.—A stipulation in a contract of lease that the lessee and his brothers should have the privilege of doing any extra work on the premises at prices which might be agreed upon cannot be made the basis of a recovery of damages. (Page 101.)

Appeal from Benton Chancery Court; *T. Haden Humphreys,* Chancellor; reversed.

STATEMENT BY THE COURT.

The plaintiff, Julius Musolf, and defendant, Edward Somers, on November 1, 1899, entered into a written contract whereby the latter leased his farm in Benton County to the former for a term of five years, and employed him to manage and cultivate the farm during said term. The contract seems to be in the nature of both a lease of the lands and a contract for hire of the services of Musolf and his family.

The contract provides, in substance, that Somers, the lessor, should furnish the farm in question, and all the stock, cattle and poultry thereon, all necessary wood for fuel, fencing and building purposes, all seed necessary for planting and to furnish and keep the tools and implements in repair and pay Musolf $20 per month during the first year of the term for extra work; that the lessee, Musolf, should, with his family, give his and their entire time to the management of the farm and attention to the orchard, stock and cattle, and that he should receive, in addition to the above-named sum for extra work, one-half of all the products of the fields, garden and orchard and one-half of the value of increase of the stock, cattle and poultry. It was further agreed that the parties should share equally the expenses of harvesting and marketing the crops produced on the premises.

It is conceded that two of Musolf's younger brothers were members of his family, and were, by both parties to the contract, so considered in making the contract.

Musolf was wrongfully dispossessed of the premises four years before the expiration of the term under a writ of unlawful detainer improvidently issued, and instituted this action against Somers and the sureties on his supersedeas bond given on appeal in the unlawful detainer action, to recover damages sustained by reason of being thus prevented from occupying the premises and performing the contract.

The chancellor made the following findings and rendered a decree in favor of the plaintiff for the balance therein found to be due:

"The plaintiff is entitled to receive as damages the value of his lease from April, 1901, to November, 1904, less what he agreed to pay defendant Somers for the lease during that period, and less what the plaintiff earned during said period; and the court doth assess the amount which plaintiff is to recover as follows:

"One-half the amount the place produced in apples, peaches and strawberries, less the expense of gathering and marketing the same, above the labor of Musolf and brothers .....................................$ 621.07
"One-half value of increase of stock......... 100.00

"One-half rental value of 100 acres of land for general farming purposes outside of first increase of stock, increase and product of poultry and product of the cows under the terms of the rental contract.... 600.00

Total _____$1,321.17

"Deduct from this sum the entire amount earned by plaintiff in farming and all other work during said period, which the court finds was................ 475.00

"Leaving balance due plaintiff of......... $ 846.17

"The court further finds that plaintiff did not during the period receive the earnings of his brothers, and is not chargeable with any part of the same; but finds that, by the terms of the contract and by his agreement with them, he was entitled to the amount earned by them under the terms of the rental contract for their support; that the reasonable cost of maintaining them diminished the amount which he would have received, but that the value of what he would have received from poultry, eggs and the product of two cows and what he would have been likely to receive by the labor of himself and brothers for extra work for defendant under the rental contract would have more than compensated him for the cost of keeping his said brothers. In this conclusion the court takes into account all the provisions of the contract, and gave judgment for plaintiff for $846.17."

Defendants appealed.

*E. P. Watson* and *Mechem & Mechem,* for appellants.

*McGill & Lindsey,* for appellee.

McCULLOCH, J., (after stating the facts.) Counsel for appellants make the following summary of their contention as to the incorrectness of the chancellor's findings and decree:

"First. In holding that plaintiff should recover one-half of the amount of apples, peaches and strawberries produced, less the expense of gathering and marketing the same above the labor of Musolf and brothers, $621.07.

"Second. In holding that there were 100 acres of land fit for general farming purposes, to be accounted for.

"Third. In refusing to allow defendants in the accounting for the money earned by brothers of plaintiff during the term.

"Fourth. In holding that the reasonable cost of keeping plaintiff's brothers would have been compensated for by the poultry, eggs, the product of two cows and the extra work which they would have done for defendant under the lease."

The chancellor, in ascertaining the value of fruit and berry products of the farm during the period named, accepted as correct the account of appellant Somers, so there can be just complaint from appellants on that point. He (the chancellor) then deducted the cost of gathering the crops over and above what would have been the services of appellee and his family if they had been allowed to perform the services under the contract. Appellants contend that the total cost of cultivating, gathering and marketing the crops should be deducted. We do not think so. The correct measure of appellee's damages was the profit or compensation he would have earned for his services under the contract if he had been permitted to perform the contract, less what he earned in other employment or could by reasonable effort have earned during the unexpired period. His profit under the contract was what he would have received, less the cost to him of performing the contract. The value of his own services should not be deducted, as that was to be compensated for by his earnings under the contract. If he was chargeable with the value of his own services, then he could not also be charged with what he earned in other employment during the unexpired period, for that would be charging him twice for the same thing. Now, the only cost of performing the contract with which he was properly chargeable was what it would have cost him to furnish, in addition to his own services, the labor which he contracted to furnish—that is the labor of his two brothers. The chancellor undertook to account for this—whether or not he did so correctly will be discussed later on in this opinion. Suffice it to say that we find no error in the conclusion reached by the chancellor on this branch of the case.

Nor do we find any error in refusing to deduct the earnings of appellant's brothers during the unexpired period of the contract. As we have already said, the amount it would have cost appellee to furnish the labor of the two brothers should have been deducted from what could have been earned under the contract, but not the amount the brothers earned in other em-

ployment. To do so would be to charge appellee twice for the same thing. He should not, at the same time, be charged with what their services would cost him and what they earned in other employment. The same principle which requires that in the adjustment of appellee's damages he be charged with his own earnings under other employment, but not the value of his own services while performing the contract, also requires that the cost to him of the services of his brothers in performing the contract be charged against him, and not their earnings in other employment. After Somers broke the contract, he could not demand that appellee keep his two brothers in his employment, so that their earnings would lessen the damage caused by the breach of the contract. All that he could demand was that the cost to appellant of obtaining the services of his brothers should be deducted from the earnings which he would have realized under the contract, for that is what it would have cost him to perform the contract.

The chancellor endeavored to charge appellee by deducting from what he would have earned by performing the contract the cost of his brothers' services, and found that "the value of what he would have received from poultry, eggs and product of two cows and what he would have been likely to receive by labor of himself and brothers for extra work for defendant under rental contract would have more than compensated him for the cost of keeping his said brothers." There is no evidence to sustain this finding. The record is destitute of any proof, either of what appellee would have received from poultry, eggs and the product of the cows, or of what would have been received for extra work, or what the cost of keeping his brothers would have been. The burden was on appellee to prove his damages, and his proof fails in this respect. The contract provided that appellee and his brothers should have the privilege of doing any extra work on the premises required by Somers at prices which might be agreed upon, but it was optional with Somers whether or not he would have any extra work done, and the privilege extended to appellee of doing the work was subject to the further contingency of his agreeing with Somers as to the price. A contract for extra work thus subject to such contingencies was no contract at all, and

could not be made the basis for recovering damages. It could not be shown that Somers would ever call upon appellee to perform any extra work—he could do so or not as he pleased —nor that the two could ever agree upon the price to be charged for such work.

Inasmuch as it is impossible to do complete justice between the parties without ascertaining and deducting the cost to appellee of supplying the services of his brothers in performing the contract, the case must be reversed for that purpose. In doing this the court should also ascertain and allow appellee an additional amount sufficient to cover what his share would have been of the "poultry, eggs and product of the two cows." On these points the case will be left open for further testimony to be introduced by either party.

We are also of the opinion that the finding of the chancellor as to rental value of the land for general farming purposes was erroneous. He found that there were 100 acres subject to cultivation, and he fixed the rental value at $3.00 per acre. The testimony shows that about half of the land was covered with fruit orchards—apples and peaches—and that this was worth very little for general farming purposes. Somers testified that other crops raised in the orchard would just about compensate for the work done on it without yielding any profit. The other witnesses made no direct estimate as to what the fruit orchard was worth for general farming purposes, though appellee gives an account of the crops the orchard land produced the years he occupied the farm. There is also proof as to what some of the land produced in other years. We are convinced from the proof that the orchard land was worth something for general farming purposes, but not as much as the chancellor allowed. We think the proof sufficient to sustain an allowance of $450, instead of $600, for appellee's half of the rental value of the land, and that justice will be done by fixing the allowance at that sum.

The decree is therefore reversed, and the case is remanded with directions, after hearing further testimony upon the questions of fact hereinbefore indicated, to enter a decree in favor of the plaintiff for the sum of $696.17, together with any further sum that the court may find his share of the poultry, eggs

and cows would have amounted to, less what the· services of his brothers would have cost him in performing the contract. ·