LINDNER v. MID-CONTINENT PETROLEUM CORPORATION.

4-9914                                          252 S. W. 2d 631

Opinion delivered November 24, 1952.

242

*Vol T. Lindsey*, for appellant.

*Eugene Coffelt, R. H. Wills* and *Ben Hatcher*, for appellee.

GEORGE ROSE SMITH, J. This is an action by Mid-Continent Petroleum Corporation to recover possession of a filling station owned by Cora Lee Lindner and leased by her to Mid-Continent. The theory of the complaint is that Mrs. Lindner wrongfully attempted to cancel the lease and thereafter unjustifiably withheld possession from the plaintiff. There was also involved certain equipment appurtenant to the filling station, but the arguments advanced on appeal present no issue with respect to this equipment. The defenses below were that Mrs. Lindner's lease to Mid-Continent was void for lack of mutuality and that the lessee was in default in the payment of rent. Trial before a jury resulted in a verdict awarding possession to the plaintiff.

The jury may have concluded from the proof that on March 19, 1949, Mid-Continent wished to rent the station as an outlet for the sale of its petroleum products, Mrs. Lindner desired to lease the property to Mid-Continent, and Mrs. Lindner's husband, the other appellant, wanted to undertake the operation of the station. In furtherance of these ends the parties executed four instruments on the date mentioned. First, Mrs. Lindner, for a rental of one cent for each gallon of motor fuel sold on the premises, leased the filling station to Mid-Con-

tinent for a term of three years with an option by which the lessee might extend the lease for two more years. In this lease the lessee reserved the privilege of termination at any time upon ten days notice to the lessor. Second, Mid-Continent in turn rented the property to Paul Lindner upon a month-to-month basis at the same rental, both parties retaining the privilege of termination upon ten days notice. Third, the Lindners authorized Mid-Continent to offset the rents against each other, so that Mid-Continent would not be required to collect the rent monthly from Lindner and pay over an identical amount to Mrs. Lindner. Fourth, Mid-Continent and Lindner agreed upon the price schedule at which the company would sell petroleum products to Lindner, this contract also being cancelable upon ten days notice by either party.

These arrangements appear to have been satisfactory until the year 1951, when Lindner removed Mid-Continent's advertising from the service station and began buying gas and oil from a competing company. On July 23, 1951, Mid-Continent gave notice that it elected to terminate its lease to Paul Lindner and its agreement to sell petroleum products to him. Three days later the Lindners retaliated by attempting to cancel Mrs. Lindner's lease to Mid-Continent. When the latter demanded possession at the expiration of the ten-day notice by which its sublease to Paul Lindner had been canceled the defendants refused to give up the property. This suit was then filed.

It is argued by the appellants that the lease from Mrs. Lindner to Mid-Continent is lacking in mutuality in that the lessee can terminate the contract upon ten days notice, while no similar privilege is granted to the lessor. This contention is without merit. Williston has pointed out that the use of the term "mutuality" in this connection "is likely to cause confusion and however limited is at best an unnecessary way of stating that there must be a valid consideration." Williston on Contracts, § 141. As we held in *Johnson* v. *Johnson,* 188 Ark. 992, 68 S. W. 2d 465, the requirement of mutuality

does not mean that the promisor's obligation must be exactly co-extensive with that of the promisee. It is enough that the duty unconditionally undertaken by each party be regarded by the law as a sufficient consideration for the other's promise. Of course a promise which is merely illusory, such as an agreement to buy only what the promisor may choose to buy, falls short of being a consideration for the promisee's undertaking, and neither is bound. *El Dorado Ice & Planing Mill Co.* v. *Kinard,* 96 Ark. 184, 131 S. W. 460; Williston, § 104. If, however, each party's binding duty of performance amounts to a valuable consideration the courts do not insist that the bargain be precisely as favorable to one side as to the other.

In this view it will be seen that Mid-Continent's option to cancel the lease upon ten days notice to Mrs. Lindner is not fatal to the validity of the contract. This is not an option by which the lessee may terminate the lease at pleasure and without notice; at the very least the lessee bound itself to pay rent for ten days. Even lesser duties than this are held to be a sufficient consideration to support a contract. Williston, §§ 103F and 105.

The appellants' other contentions may be answered in a few words. The argument that Mid-Continent defaulted in the payment of rent is based on the fact that it tendered no payments after the date on which the cancellation of its sublease to Paul Lindner became effective. After that date, however, the tenant was being wrongfully deprived of possession by the landlord, and in those circumstances no rent was due. *Collins* v. *Karatopsky,* 36 Ark. 316. Nor do we think the court erred in charging the jury that these leases are legal in form or in refusing to allow the jury to decide whether Mrs. Lindner's lease to Mid-Continent made the lessee's duty of performance entirely optional. The interpretation of an unambiguous contract is for the court, not for the jury, *Paepcke-Leicht Lbr. Co.* v. *Talley,* 106 Ark. 400, 153 S. W.

833, and the court was correct in its construction of these agreements.

Affirmed.